IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMY BOEVING, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 21-cv-00353-JPG |
| | ) |
| CITY OF COLLINSVILLE, ILLINOIS, | ) |
| | ) |
| And RANDALL E. TEDESCO a/k/a | ) |
| RANDY TEDESCO | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**I.  Background**

Plaintiff Amy Boeving ("Plaintiff" or "Ms. Boeving") is suing her former employer Randall Tedesko a/k/a Randy Tedesco ("Mr. Tedesco") and the City of Collinsville ("Collinsville"), collectively, ("Defendants"). In October 2016, Ms. Boeving worked as a Planning/Building Assistant in the Community Development Department for Collinsville beginning in October 2016 (Doc. 36, ¶ 13). Mr. Tedesco was Ms. Boeving's supervisor. His title was Chief Building Officer in the Community Development Department. *Id*. at ¶ 15.

Plaintiff claims that her supervisor, Mr. Tedesco, pressured her to engage in a sexual relationship. *Id*. at ¶ 15. Specifically, Plaintiff alleges Mr. Tedesco committed actions which include the following: "leering and staring at Plaintiff; unwanted touching of Plaintiff's person without Plaintiff's consent; constant and continued propositioning of Plaintiff to meet outside of work socially and/or romantically and to engage in a romantic relationship, as well as repeated sexual overtures and inappropriate sexual comments on a nearly daily basis." *Id*. at ¶ 16. Plaintiff claims she rejected Mr. Tedesco advances and never consented to her touching in any way. *Id*. at ¶¶ 17-18.

In June 2018, Ms. Boeving approached David Bookless, another supervisor at Collinsville to discuss her treatment. *Id*. at ¶ 19. Mr. Bookless allegedly told Ms. Boeving not to lodge a complaint and told her it would be a bad idea to do so. *Id*. at ¶ 20. Ms. Boeving claims that Mr. Tedesco's treatment was "open, obvious, and widely known throughout City Hall." *Id*. at ¶ 25. Plaintiff's co-worker also filed a complaint against Mr. Tedesco. *Id*. at ¶ 26. Defendants admit that Ms. Boeving's co-worker who witnessed Mr. Tedesco's actions filed a complaint. *Id*. at ¶ 26. Ms. Boeving states supervisors approved of her work even as Mr. Tedesco's mistreatment of her continued in the next coming months. *Id*. at ¶ at 29.

During Summer 2019 Ms. Boeving had monthly meetings with various directors concerning Mr. Tedesco's treatment, where Mr. Tedesco's treatment escalated. *Id*. at ¶¶ 30-32. These directors discouraged Ms. Boeving from filing a complaint and implied that such a complaint would be detrimental to her employment. *Id*. at ¶ 33.

Ms. Boeving states that Defendants retaliated against her by subjecting her to "significantly disparate treatment in the work place," "increased scrutiny and criticism of her work product, increased scrutiny of her time entries, directing personal disparagements made both to Plaintiffs and to others employed by Collinsville and in the community at large, increasing her work load to impossible levels, and subjecting Plaintiff to hostile treatment in the work place, which caused Plaintiff to suffer increased and unwarranted stress in the work place." *Id*. at ¶ 111. Ms. Boeving also alleges that Collinsville deprived Plaintiff of equal pay compared to her male coworkers in that they scrutinized her time sheets, accused her of fraud, and ignored her male-co-workers who frequently and fraudulently included time not worked on timesheets. *Id*. at ¶¶ 86-87.

Plaintiff alleges she began suffering "severe and debilitating anxiety" and took a

"covered and approved concerns voiced by Plaintiff's employment". *Id*. at ¶¶ 110. When Ms. Boeving returned to work on May 11, 2021, her keycard fell off and was found by an unknown co-worker. *Id*. at ¶¶ 131-132. Ms. Boeving's superiors gave her a five (5) day suspension for this security violation. Ms. Boeving claims this suspension was in retaliation for her FMLA leave. *Id*. at ¶¶ 133.

Plaintiff filed a charge of discrimination and retaliation with the Illinois Department of Human Rights, and the Equal Employment Opportunity Commission ("EEOC") against employer Collinsville and Mr. Tedesco for sexual harassment, gender-based employment discrimination, and retaliation. *Id*. at ¶ 8. On April 1, 2021, Ms. Boeving filed a complaint (Doc. 1). She amended her complaint ("First Amended Complaint") on May 12, 2021 (Doc. 17) to add a claim of retaliation under the Family and Medical Leave Act ("FMLA"). Defendants filed a motion to dismiss, which the Court denied in part and granted in part. (Doc. 33). Specifically, the Court denied Defendants' Motion to Dismiss Count IV, a violation of the Illinois Gender Violence Act. However, the Court granted Defendants' Motion and dismissed Count III against both Defendants and Count I and VI against Defendant Tedesco. (Doc. 33). Plaintiff filed a Second Amended Complaint ("Complaint")[1] (Doc. 36) and added Gender Discrimination under Title VII, Gender Discrimination under the IL Human Rights Act, Gender Discrimination in Violation of the Equal Pay Act of 1963, and Gender Discrimination in Violation of the IL Equal Pay Act.

The Second Amended Complaint alleges the following claims:

- Count I – Hostile Work Environment/Sexual Harassment in violation of Title VII
- Count II – Hostile Work Environment/Sexual Harassment in violation of Illinois Human Rights Act
- Count III – Gender Discrimination in Violation of Title VII

---

[1] As the Second Amended Complaint is now the operative complaint, any references to "Complaint" will refer to the Second Amended Complaint.

- Count IV – Gender Discrimination in Violation of IL Human Rights Act
- Count V – Gender Discrimination in Violation of the Equal Pay Act
- Count VI – Gender Discrimination in Violation of IL Equal Pay Act
- Count VII – Violation of IL Gender Violence Act
- Count VIII – Retaliation in Violation of Title VII
- Count IX – Retaliation in Violation IL Human Rights Act
- Count X – Retaliation in Violation of FMLA

On April 22, 2022, Defendants filed a second motion to dismiss (Doc. 55). Defendants argue that Plaintiff has failed to state a claim for relief under the federal Equal Pay Act or Illinois Equal Pay Act, counts V and VI, respectively, and should therefore be dismissed.

## II. Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6), motion to dismiss for failure to state a claim upon which relief may be granted, the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### III. Analysis

The federal Equal Pay Act of 1963 (the "EPA") is a part of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (the "FLSA"). The State of Illinois's Equal Pay Act of 2003, § 820 ILCS 112/1 et seq. (the "IEPA") prohibits employers from discriminating between employees on the basis of sex by paying wages to an employee at a rate less than the rate at which the employer pays wages to another employee of the opposite sex for the same or substantially similar work on jobs, the performance of which requires substantially similar skill, effort, responsibility, and which are performed under similar working conditions. The EPA is nearly identical in prohibiting an employer from discriminating between employees on the basis of sex by paying unequal wages. 29 U.S.C. § 206(d)(1).

To state a claim under the EPA, the plaintiff must allege that (1) different wages are paid to employees of another gender; (2) that the employees of the other gender do equal work that requires equal skill, effort, and responsibility; and (3) that the employees have comparable working conditions. *Markel v. Bd. Of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 912–13 (7th Cir. 2002) (quoting *Fallon v. State of Ill.*, 882 F.2d 1206, 1208–09 (7th Cir. 1989) ); *Wanless v. Ill. Human Rights Comm'n*, 695 N.E.2d 501, 503 (Ill. App. Ct. 1998) ("When analyzing claims of discrimination under the [IHRA] Act, Illinois courts have looked to the standards applicable to analogous federal claims."); *Betts v. Option Care Enterprises, Inc.*, No. 18-cv-4023, 2019 WL 193914, at *9 (N.D. Ill. Jan. 15, 2019).

Defendants argue that Plaintiff provides nothing but conclusory allegations in her complaint and therefore does not state a *prima facie* case for pay discrimination under EPA and IEPA. Additionally, Defendants argue that Plaintiff's complaint fails to plead facts sufficient to demonstrate her claims are timely. (Doc. 55). The Court will take each of these arguments in

turn.

First, Defendants argue that Plaintiff provides no details and provide bare recitations of the elements of a cause of action under the EPA and IEPA. (Doc. 55 at 4). Plaintiff responds and states the complaint is sufficient. Specifically, Plaintiff states the following four allegations state an adequate claim for the federal and state equal pay act.

> (i) "Plaintiff began employment as a Planning/Building Assistant in the Community Development Department for Collinsville where she quickly established herself as a model employee." [Doc. #36] at ¶13.
>
> (ii) "[City] routinely scrutinized and analyzed Plaintiff's time sheets and even chastised her and accused her of fraud however, ignored her former male co-workers who frequently and fraudulently included time on said timesheets that was not worked and which [City] was or should have been aware was not worked." [Doc #36] at ¶ 86, 93.
>
> (iii) "Upon information and belief, [City] routinely gives Plaintiff's former male co-workers larger and more significant raises than Plaintiff and her former female co-workers despite Plaintiff having the same or similar job duties and the same or better performance evaluations." [Doc #36] at ¶ 87, 94.
>
> (iv) "Upon information and belief, [City] routinely gives male employees higher wages than female employees for equal work which requires equal skill despite the fact that the working conditions for both male and female employees of [City] is and was similar." [Doc #36] at ¶ 88, 95.

(Doc. 57 at 4). Defendant cites *Karlo v. St. Augustine Coll*., No. 20-cv-5084, 2021 WL 2156438, at *3 (N.D. Ill. May 27, 2021), in support of its contention Plaintiff does not adequately state a claim. In *Karlo*, a woman who worked at Augustine College as an accounts payable administrator, and then as a teaching faculty member was terminated in July 2017. *Id*. *1. The complaint raised concerns about pay disparities between male and female employees under the EPA and IEPA. *Id*. at *2. Her complaint offers one example that she was paid $4,000 less than a fellow faculty member Jevunal Nava, even though they both had their Master's Degrees and similar lengths of tenure. *Id*. *1. The district court held Karlo did not properly allege Mr. Nava was similarly situated during the relevant timeframe. *Id*. at *5.

After dismissing Karlo's complaint related to Mr. Nava, the court also reviews the complaint's comparisons to other "male counterparts." The *Karlo* court states regarding other comparators, that Karlo did not plausibly allege she was paid less than male employees in similar conditions. The Court states:

> Her allegations about unnamed "male counterpoints" are simply that they performed work "that required substantially similar skill, effort and responsibility [...] under similar working conditions." (Id. at ¶ 12–13). It is unclear from the Complaint whether these were faculty members, how much they were paid, what their work entailed, or under what conditions they worked. These conclusory allegations cannot bridge the time gap between Nava's promotion and Karlo's termination.

*Karlo*, No. 20-CV-5084, 2021 WL 2156438, at *4. Plaintiff states that *Karlo* is not analogous to this case because *Karlo* analyzed how Karlo and Mr. Nava were dissimilar because the latter was her supervisor and therefore they were not similarly situated. (Doc. 57 at 5-6). However, as quoted above, the *Karlo* court first analyzed the EPA and IEPA claims against Mr. Nava, and, in a separate section, analyzed the complaint related to unnamed "male counterparts" in addition to Mr. Nava.

The Court finds Plaintiff's complaint is similar to the *Karlo* court's concerns that the complaint contained "bare recitation of the elements" of an EPA or IEPA cause of action, and therefore the Court is not obliged to credit them as true. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also, e.g., Wade v. Morton Bldgs., Inc.*, No. 09 CV 1225, 2010 WL 378508, at *4 (C.D. Ill. Jan. 27, 2010) (finding that although plaintiffs need not plead "unknown details" such as the names or salaries of specific colleagues, "[w]ithout some description of the comparable male's position and duties, as compared to Plaintiff's duties, no inference of plausibility arises to support her conclusion that the work was equal").

While details such as names and salaries are not needed, the Court is unclear what other

male colleagues Plaintiff is referring to, how much they were paid in comparison to her, what their work entailed, and under what conditions they worked. Plaintiff's allegations that she had "the same or similar job duties," former male colleagues received "more significant raises," and Defendant gave "male employees higher wages than female employees for equal work" is not enough.

Next, the Court addresses Defendants' second argument regarding statute of limitations. The statute of limitations for an equal pay violation under the IEPA is five years from the date of underpayment. 820 ILCS 112/30 ("Every such action shall be brought within 5 years from the date of the underpayment. For purposes of this Act, 'date of the underpayment' means each time wages are underpaid."). EPA ordinarily has a two-year statute of limitations. 29 U.S.C. § 255(a). That period is extended to three years if the violation is "willful." *Id*. Plaintiff's Complaint states Plaintiff's employment began "[i]n or about October 2017." Plaintiff argues her Complaint is sufficient to prove "willfulness" of City's violations. (Doc. 57 at 4). Plaintiff's Complaint has not provided details regarding the span of when such issues occurred, or whether she is in fact in violation of the statute of limitations. All that Plaintiff states is that such equal pay violations occurred during the duration of Plaintiff's employment. The Court need not delve further into the statute of limitations issue since the Court already believes Plaintiff has not stated a claim upon which relief may be granted on Counts V and VI.

### IV.   Conclusion

The Court hereby:

- **GRANTS** Defendants' Motion to Dismiss Counts V and VI of Plaintiff's Second Amended Complaint (Doc. 55);
- **FINDS AS MOOT** the parties Joint Motion for Extension of Time of Mandatory

    Mediation Deadline and Hold Discovery Deadline in Abeyance (Doc 62);

- **ORDERS** the parties to provide the Court with amended scheduling with proposed deadlines if they request to extend any deadlines from the scheduling order within seven days entry of this Order.

**IT IS SO ORDERED.**
**Dated: August 11, 2022**

                                        **/s/ J. Phil Gilbert**
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**